**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1.    FRANK E. WILLARD, III, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-14-1028-C |
| | ) | |
| 1.    CACTUS DRILLING CO., L.L.C., | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
|        Defendant. | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

**COMES NOW** the Plaintiff, Frank E. Willard, III, and for his Complaint in the above-entitled action, alleges and states as follows:

**PARTIES**

1. Plaintiff, Frank E. Willard, III, is an adult male resident of Grady County, Oklahoma.

2. Defendant Cactus Drilling Co., L.L.C., is an entity doing business in Kingfisher County, Oklahoma.

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of: (a) disability discrimination and retaliation in violation of the American with Disabilities Act ("ADA" and "ADAAA"), (b) retaliation for and interference with Plaintiff's use or attempted of leave under the Family Medical Leave Act ("FMLA"), and (c) worker's compensation retaliation.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Grady County and Kingfisher County, Oklahoma. Defendant is doing business in such county and may be served in said county. Grady County and Kingfisher County are located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 5, 2014. Plaintiff received his Dismissal and Notice of Rights letter from the EEOC dated July 1, 2014 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff began his employment with Defendant on or about July 11, 2011 as a floorhand, reporting to Driller Donald Richmond, Jr., who reported to toolpushers Michael Phillips and Jackie Downey.

8. In or around December 2012, Plaintiff was injured while working on an oil rig when a wire cable slipped, got caught around Plaintiff's neck, caused Plaintiff to fall out of a gurney, and hung Plaintiff in the air until his co-workers were able to release him. Plaintiff

had bruising around his neck and significant injuries to his throat, shoulder and back.

9. Following his on-the-job injury, Plaintiff was told not to file an incident report until two (2) weeks after his injury, due to the fact that the crew was to receive a substantial bonus for operating accident free for that time period.

10. Plaintiff completed an incident report in or around January 2013, with the assistance of his supervisor, Richmond, Jr., and had all witnesses to the accident sign the report. The report was then submitted to Human Resources.

11. Shortly after Plaintiff's injury, he began to experience serious side-effects due to the nature of the accident. Particularly, Plaintiff had previously been diagnosed with bi-polar disorder, but had not had any recent episodes. However, after his injury, Plaintiff began having nightmares, trouble sleeping, insomnia, difficulty swallowing, decreased appetite, flashbacks, mood swings and panic attacks. Plaintiff also experienced significant pain in his neck, back and shoulders. On one occasion, Plaintiff had to be cut out of a hooded sweatshirt because the tie around his neck triggered a panic attack.

12. His anxiety and panic attacks increased in frequency and severity, so he sought medical attention in or around August 2013.

13. In addition, in or around early August 2013, Plaintiff spoke with Patsey McCurdy, Benefits Manager, about taking a week of FMLA leave to care for his wife who was planning to have foot surgery. McCurdy provided FMLA paperwork to Plaintiff and wrote on a "receipt of notification" letter that he was to be off on leave from August 7, 2013

to October 31, 2013, despite his request for only one week off. However, Plaintiff's wife ultimately chose not to have the surgery, and Plaintiff notified McCurdy he would not need FMLA.

14. On or about August 26, 2013, Plaintiff's physician diagnosed him with post-traumatic stress disorder ("PTSD") and determined that Plaintiff needed to be off work for twelve (12) weeks due to his medical condition. Plaintiff was required to continue in his cognitive therapy treatment with his doctor and placed on medication. He directed Plaintiff to request FMLA.

15. The next day, August 27, 2013, Plaintiff requested FMLA paperwork from McCurdy for time off for his personal health condition. Plaintiff was given a receipt of notification signed by McCurdy, stating that his FMLA leave would run from August 26, 2013 until November 19, 2013.

16. On or about August 28, 2013, Plaintiff also submitted his paperwork for short term disability benefits as directed by McCurdy.

17. Plaintiff was then off work from August 26, 2013 until on or about September 9, 2013, when he had a follow-up appointment with his physician. Plaintiff's physician completed the FMLA paperwork, requesting that Plaintiff be allowed to take the full twelve (12) weeks off. After his doctor's appointment, Plaintiff immediately went to Defendant's office to submit the completed FMLA documents for care of his own health condition.

18. Plaintiff spoke with McCurdy and Vice President of HR, Kathy Willingham,

about his FMLA paperwork. McCurdy falsely told Plaintiff that he could not take FMLA because it was for the treatment of a "mental" condition. However, McCurdy told Plaintiff that if he signed a form stating that his injury was not work-related, she would allow him to take the twelve (12) weeks of FMLA leave. Plaintiff refused to sign the form, stated that his injury was incurred on the job, that his FMLA paperwork was valid, and that pursuant to their prior conversation, Plaintiff understood he was entitled to be off for twelve (12) weeks ending on or about November 19, 2013. Plaintiff also directed McCurdy to the incident report previously filed regarding his injury.

19. McCurdy then falsely told Plaintiff to notify her when he was released by his physician and to keep in contact with his supervisor. McCurdy did not take a copy of Plaintiff's FMLA paperwork, as she told him it was not necessary since she had told him he was not eligible due to his condition being a mental impairment. Although not designated as "FMLA" leave (though his time off should have been so designated), Plaintiff was then apparently off on sick leave. And, during the time Plaintiff was off work, Plaintiff continued to keep in contact with Toolpusher Downey to notify him of his progress.

20. Plaintiff was granted short term disability on or about September 30, 2013, allowing benefits retroactively from August 26, 2013 to October 10, 2013. Benefits were then extended through November 24, 2013.

21. Due to his medical conditions, Plaintiff is a qualified individual with a disability within the meaning of the ADA and ADAAA in that he was disabled, has a record

of disability, and/or was perceived as disabled. His disabilities substantially limit and/or limited him in one or more major life activities, including but not limited to sleeping, breathing, eating, walking, sitting, swallowing, pushing, pulling, mental alertness and inability to finish tasks. His disabilities impact one or more of his internal bodily processes, including but not limited to normal cognitive function, and musculoskeletal function, *inter alia*. However, at all times relevant hereto, he was able to perform the essential functions of his job with or without reasonable accommodations.

22. In or around October 2013, Plaintiff received a statement from his 401k plan administrator for the period from July 1, 2013 to September 30, 2013. The statement listed Plaintiff's date of termination as August 25, 2013, the day prior to Plaintiff's use of FMLA leave.

23. Plaintiff called McCurdy to ask why his 401k plan stated he was terminated, and was told to speak with the payroll department. However, payroll referred Plaintiff back to McCurdy. Plaintiff then contacted the Oklahoma Employment Security Commission to see if he was eligible for unemployment and to see if he was indeed terminated. Over the next several weeks, Plaintiff tried to speak with McCurdy about his employment status, but she would either state she could not speak with Plaintiff or would not return his calls.

24. Therefore, on or about October 25, 2013, Plaintiff contacted Toolpusher Downey and asked why he had been terminated. Downey stated that he did not fire Plaintiff, but that he heard it was because Plaintiff did not return after his twelve (12) weeks of FMLA.

(Significantly, Plaintiff's twelve weeks of leave would not have expired as of October 25, 2013). Downey directed Plaintiff to call Defendant's office to inquire about his termination.

25. Plaintiff then called McCurdy and was told that he had been fired for failing to return to work following exhaustion of his FMLA leave. However, Plaintiff's twelve (12) weeks of leave had not yet expired. Plaintiff also left a message for Willingham, asking for an explanation for his termination.

26. Plaintiff also contacted the Oklahoma Department of Labor to report FMLA violations by Defendant and a lengthy investigation was conducted. Plaintiff was told that Defendant had violated FMLA, but that as the twelve weeks allotted for FMLA had at that point expired, there was nothing else the Department of Labor could do.

27. As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADA AND ADAAA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

28. The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

29. More specifically, Plaintiff was a qualified individual with a disability in that he suffers from a physical impairment (i.e., neck injury) and mental disorders (i.e. bipolar

disorder and PTSD) which substantially limits his ability to perform one or more major life activities as set forth above. Further, Plaintiff's disabilities impact one or more of his internal bodily processes as shown herein.

30.     Despite said impairments, Plaintiff could perform the essential functions of his job with or without reasonable accommodations at all relevant times hereto.

31.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

32.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: FMLA

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

33.     The matters alleged above constitute retaliation for and interference with Plaintiff's use and/or attempted use of medical leave in violation of the Family Medical Leave Act.

34.     Plaintiff was entitled to medical leave because he required time off due to a serious health condition (as set forth above) and worked for Defendant (i.e., an entity with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to his need for leave.

35.     Defendant retaliated against Plaintiff for his use of time off and interfered with

his FMLA leave rights.

36. As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

37. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendant's violation of the FMLA), attorney fees and costs.

## COUNT III: WORKERS' COMPENSATION RETALIATION

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

38. Defendant's actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act, 85 O.S. §341.

39. Plaintiff sustained a job-related injury for which he could assert a claim for benefits under the Oklahoma Workers' Compensation Act.

40. Defendant had knowledge of Plaintiff's work-related injury. Defendant terminated Plaintiff's employment.

41. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

42. Defendant's actions were willful, wanton and/or conducted in a reckless

disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 23rd DAY OF SEPTEMBER, 2014.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
EMILY VAN VOLKINBURG, OBA #31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800      (telephone)
(405) 239-3801      (facsimile)
leonardjb@leonardlaw.net
emilyv@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED